IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

ANTOWAN THORNE,                     )
                                     )
            Movant,           )
                                     )
        v.                     )        1:16-cv-669 (LMB)
                                   )        1:14-cr-165 (LMB)
UNITED STATES OF AMERICA.      )
                                     )
        Respondent.      )
                                     )

## MEMORANDUM OPINION

Before the Court is Antowan Thorne's ("Thorne" or "movant") pro se Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255 ("§ 2255 Motion") [Dkt. No. 108] and the accompanying memorandum ("§ 2255 Memo.") [Dkt. No. 108-1], in which he argues that he received constitutionally ineffective assistance from his appointed attorney, Gregory Stambaugh ("Stambaugh" or "counsel"), and raises several additional claims regarding errors allegedly committed by the Court. The government has responded to the motion and Stambaugh has filed a declaration pursuant to 28 U.S.C. § 1746 that addresses his alleged failure to provide effective assistance. See Resp. in Opp'n [Dkt. No. 114] ("Gov. Opp'n"); Decl. of Gregory Stambaugh [Dkt. No. 113] ("Stambaugh Decl."). Thorne has filed a response to both the government's opposition and Stambaugh's declaration. See Movant's Reply to the Gov.'s Opp'n [Dkt. No. 119] ("Thorne Reply").

Having reviewed the entire record, the Court finds no merit to Thorne's motion, which will be dismissed without the need for an evidentiary hearing.

## I.  BACKGROUND

Thorne was indicted for Conspiracy to Distribute 100 Grams or More of Heroin Resulting in Death, in violation of 21 U.S.C. § 846, and Possession of a Firearm in Relation to a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A). Ind., [Dkt. No. 15]. According to the indictment, Thorne conspired to sell heroin to young adults in Fairfax County, Virginia from 2012 to 2013. Id. ¶¶ 1, 4. On August 21, 2013, Thorne sold heroin to a group of four individuals: Zachary Power, Klye Alifom, Neemah Zadeh, and Emylee Lonczak. Id. ¶ 9. Lonczak, a 16-year-old from McLean, Virginia and first-time heroin user, became unconscious shortly after injecting the heroin and died overnight. Id. An autopsy confirmed that a drug overdose contributed to her death. Id. The government alleged that Thorne's conspiracy distributed at least 720 grams of heroin, a Schedule I controlled substance. Presentence Investigation Rep., [Dkt. No. 62] at 5.

On May 16, 2014, Thorne appeared with Gregory Stambaugh, his appointed defense counsel, for arraignment on the indictment. Minute Entry, May 16, 2014, [Dkt. No. 18].[1] At the arraignment, Thorne made an oral motion for new counsel, explaining that Stambaugh was encouraging him to take a plea but Thorne preferred to go to trial. Tran., May 16, 2014, [Dkt. No. 95] at 2-3. The Court explained that whether to plead guilty was Thorne's decision, but, finding no basis for the request for new counsel, denied the motion and set the case for a jury trial to begin on July 21, 2014. Id. Thorne's counsel subsequently filed a motion to transfer venue pursuant to Fed. R.Crim. P. 21(b) and a motion for a bill of particulars. [Dkt. Nos. 24, 25]. Thorne, acting pro se, filed motions to suppress items seized during a warrant-authorized search of his home and to dismiss his indictment on Due Process grounds. [Dkt. Nos. 31, 32]. The Court

---

[1] Thorne was arrested on a criminal complaint on April 9, 2014 and on April 10, 2014, Stambaugh was appointed to represent him. CJA 20 Form, [Dkt. No. 11].

denied the motions to transfer venue, for a bill of particulars, and to dismiss the indictment, but granted Thorne's motion to suppress on the basis of staleness. Order, June 26, 2014, [Dkt. No. 36].

On July 11, 2014, Thorne waived his right to a jury trial. [Dkt. No. 39]. Three days later, at Thorne's request, Stambaugh filed a motion to withdraw and continue the trial date. [Dkt. No. 42]. The Court heard the motion the following day, by which time Thorne had changed his mind and stated that he did not want his counsel to withdraw. Minute Entry, July 15, 2014, [Dkt. No. 46]; Tran., July 15, 2014, [Dkt. No. 98] at 10. Based on that representation, the motion to withdraw and continue the trial date was denied. Order, July 15, 2014, [Dkt. No. 47]. A week before the scheduled trial, Thorne's counsel requested a continuance due to a family medical emergency and the bench trial was continued to August 20, 2014. [Dkt. No. 49].

During the one-day bench trial, the government's case in chief included testimony from James Berthay, Thorne's co-conspirator who had pleaded guilty and agreed to cooperate with the government, as well as Power, Alifom, and Zadeh, three witnesses who were with Lonczak on the night of August 21, 2013, and Clancy Kelly (the girlfriend of Power) who testified that she had purchased drugs from Thorne in the summer of 2013. At the close of the government's evidence, the Court granted Stambaugh's motion for judgment of acquittal with respect to the death-resulting allegation. Tran., Aug. 20, 2014, [Dkt. No. 99] at 207-10 ("Trial Trans."). Following the conclusion of the evidence, the Court found Thorne guilty of Conspiracy to Distribute 100 Grams or More of Heroin and not guilty of Possession of a Firearm in Relation to a Drug Trafficking Crime. Order, Aug. 20, 2014, [Dkt. No. 55].

Acting pro se, Thorne filed motions to remove his attorney, [Dkt. No. 56], and dismiss the case, [Dkt. No. 57]. Both motions were denied as meritless. Order, Oct. 3, 2014, [Dkt. No.

58]; Order, Nov. 14, 2014 [Dkt. No. 74]. At the sentencing hearing, the Court calculated Thorne's offense level as 34 and his criminal history category as VI, resulting in a guidelines range of 262-327 months of imprisonment. [Dkt. No. 62] at 22. In advance of sentencing, Stambaugh filed objections to the guidelines, including an objection to the drug quantity attributed to movant. Id. at 25. The Court sentenced Thorne to 300 months of imprisonment. Judgment, [Dkt. No. 70].

After Stambaugh timely filed a notice of appeal, [Dkt. No. 77], he moved to withdraw as counsel, [Dkt. No. 78], and the request was granted, Order, Nov. 20, 2014, [Dkt. No. 79]. The Fourth Circuit appointed new appellate counsel. Order of USCA, Nov. 25, 2014, [Dkt. No. 82]. On appeal, Thorne argued that the evidence was insufficient to sustain his conviction and that the Court erred in finding that he was a career offender and in applying firearm and obstruction of justice enhancements. United States v. Thorne, No. 14-4878, [Dkt. No. 25] at 1 (4th Cir. Mar. 30, 2015). The Fourth Circuit affirmed the conviction and the sentence, Opinion of USCA, [Dkt. No. 102], and the Supreme Court denied certiorari, United States v. Thorne, No. 15-6402. Thorne, acting pro se, timely filed the pending § 2255 motion.

## II.    DISCUSSION

Thorne raises sixteen claims of ineffective assistance of counsel, as well as a sentencing challenge under Johnson v. United States, 135 S. Ct. 2251 (2015), and three allegations of error by the Court. As explained below, none of these claims entitle movant to the relief sought.

### A.   **Standard of Review**

A motion to vacate under 28 U.S.C. § 2255 provides for a collateral attack on a conviction or sentence when the conviction or sentence was imposed in violation of the United States Constitution or laws, when the court lacked jurisdiction to impose the sentence, when the

sentence was in excess of the maximum authorized by law, or when the conviction or sentence is otherwise subject to a collateral attack. See 28 U.S.C. § 2255(a). Relief under § 2255 is reserved for situations in which failing to grant relief would be "inconsistent with the rudimentary demands of fair procedure or constitute[] a complete miscarriage of justice." United States v. Vonn, 535 U.S. 55, 64 (2002) (quoting United States v. Timmreck, 441 U.S. 780, 783 (1979)). To prevail on a § 2255 motion, the movant bears the burden of proving his grounds for collateral relief by a preponderance of the evidence. See Jacobs v. United States, 350 F.2d 571, 574 (4th Cir. 1965).

A § 2255 motion "may not do service for an appeal," and claims that have been waived are therefore procedurally defaulted unless the movant can show cause and actual prejudice. United States v. Frady, 456 U.S. 152, 165-67 (1982). Although procedural default generally bars claims not previously raised, a freestanding claim of ineffective assistance of counsel may properly be asserted for the first time in a § 2255 petition. See United States v. DeFusco, 949 F.2d 114, 120-21 (4th Cir. 1991).

Under § 2255(b), a movant is to be granted an evidentiary hearing on his motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." Summary dismissal of § 2255 allegations is "warranted only if a [movant's] allegations when viewed against the record of the plea hearing are palpably incredible or patently frivolous or false." United States v. White, 366 F.3d 291, 297 (4th Cir. 2004) (quoting Blackledge v. Allison, 431 U.S. 63, 76 (1977)).

## B. Ineffective Assistance of Counsel

To establish ineffective assistance of counsel, Thorne must show both (1) that "counsel's performance was deficient" and (2) that he was prejudiced by that deficient performance.

Strickland v. Washington, 466 U.S. 668, 687 (1984). Deficient performance occurs when "counsel's representation fell below an objective standard of reasonableness" as established by "prevailing professional norms." Id. at 687-88. Because it "is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence" and because a wide range of legitimate defense strategies are possible in a given case, there is a "strong presumption" that counsel's conduct was within the wide range of reasonable professional assistance and "scrutiny of counsel's performance must be highly deferential." Id. at 689-90. In keeping with this standard, a court is to assess counsel's conduct not with the benefit of hindsight, but from the perspective of counsel at the time of the relevant action or decision. Strickland, 466 U.S. at 689-690.[2]

As to the second prong, a movant can show prejudice when there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A showing that "the errors had some conceivable effect on the outcome of the proceeding" is not enough; a reasonable probability requires that the errors are "sufficient to undermine confidence in the outcome," id. at 693, 694, or that the results of the proceeding were fundamentally unfair, Lockhart v. Fretwell, 506 U.S. 364, 369 (1993). Assessing prejudice "requires the court deciding the ineffectiveness claim to 'consider the totality of evidence before the judge or jury.'" Elmore v. Ozmint, 661 F.3d 783, 858 (4th Cir. 2011) (quoting Strickland, 466 U.S. at 695). "Failure to make the required showing of either

---

[2] When discussing the presumption that counsel's conduct was reasonable, the government's brief states: "For a defendant to overcome this presumption, 'the analysis of counsel's performance typically must be comprehensive; i.e., not narrowly limited to counsel's failures.' Strickland, 466 U.S. at 689." Gov. Opp'n at 5. Although Strickland emphasizes the importance of assessing counsel's actions "in light of all the circumstances" "viewed as of the time of counsel's conduct," 466 U.S. at 690, it does not contain the language cited in the response brief. Therefore, the government would do well to take appropriate corrective measures in pending cases where this quote was referenced and exclude it from future briefs.

deficient performance or sufficient prejudice defeats the ineffectiveness claim." Strickland, 466 U.S. at 700.

## 1. Claim 1 (Motion to Suppress, Communication, and Preparation for Trial)[3]

In this claim, Thorne alleges failure to move to suppress witness testimony, the breakdown of communication between client and counsel, and counsel's failure to prepare adequately for trial.

With respect to the suppression issue, "the threshold question [in tainted fruit analysis] is whether testimonial evidence is the product of an illegal search." United States v. Gray, 491 F.3d 138, 154 (4th Cir. 2007). Thorne argues that "statements glean [sic] from interviews with the government witnesses is [sic] the product of the search warrant namely, James Berthay, Kyle Alifom, Neemah Zedah and Zachary Power, and because counsel did not move to suppress the statements, Thorne was denied legal effective assistance." § 2255 Memo. at 18. Contrary to Thorne's argument, these statements were not the product of the search; instead they were part of the basis upon which the search warrant was issued. As the government explains, "[t]he affidavit in support of the search warrant for [Thorne's] residence included information provided by Kyle Aliform, Neemah Zadeh, Zachary Power, and James Berthay." Gov. Opp'n at 7. As such, the statements of these witnesses were not fruits of the search and there were no grounds for counsel to move to suppress them. Moore v. United States, 934 F. Supp. 724, 731 (E.D. Va. 1996); see also Oken v. Corcoran, 220 F.3d 259, 269 (4th Cir. 2000) ("[C]ounsel [is] not constitutionally ineffective in failing to [take action if] . . . it would have been futile for counsel to have done so.").

---

[3] Although Thorne labels his claims with numbers, within several of the numbered claims he raises more than one issue. This opinion will address each claim as it is numbered.

Thorne's second argument, that his counsel failed to communicate with him, § 2255 Memo. at 20, is belied by the facts. As a general rule, attorneys are required to keep their clients reasonably informed concerning the status of their matters. Noland v. French, 134 F.3d 208, 218 (4th Cir. 1998) ("Counsel has a duty to keep her client informed of important developments in the trial and 'to consult with the defendant on important decisions.'" (citing Strickland, 466 U.S. at 688)); see also Model Rules of Prof. Conduct § 1.4 (Am. Bar Ass'n 2016). But, beyond repeatedly alleging that there was a "breakdown in communication," § 2255 Memo. at 18, 20, 21, Thorne provides no detail about what communication counsel ignored or any information that counsel failed to convey, nor does he make any representations about how the outcome of the trial would have been different had this additional communication taken place. As such, he has not satisfied either the first or second Strickland prong. United States v. Blackstone, No. 1:12CR00022-14, 2015 WL 6072240, at *3 (W.D. Va. Oct. 15, 2015) (dismissing an ineffective assistance of counsel claim based on failure to adequately communicate where the movant "provide[d] no evidence in support of his claim and [did] not describe how he was prejudiced by counsel's alleged failure to communicate"). Moreover, Thorne's claim about the total absence of communication is directly contradicted by his own representations, made on the eve of trial, that he and his attorney were getting along and he was satisfied with counsel's performance. [Dkt. No. 98] at 10. This representation is corroborated by Stambaugh's affidavit, which states that he met in person with Thorne fourteen times in the four months before trial and spoke on the telephone "many" times. Stambaugh Decl. ¶ 4. Accordingly, there is no basis on which to find a breakdown in communication.

In his third argument, Thorne alleges that counsel failed to conduct an adequate investigation. Under Strickland, "counsel has a duty to make reasonable investigations or to

make a reasonable decision that makes particular investigations unnecessary." 466 U.S. at 691.
When a movant alleges that counsel's failure to investigate amounts to ineffective assistance, he
must proffer "what favorable evidence or testimony would have been produced." See Beaver v.
Thompson, 93 F.3d 1186, 1195 (4th Cir. 1996). Here, Thorne's failure-to-investigate claim
primarily consists of general allegations of inadequate preparation, specifically failure to
interview or investigate witnesses. § 2255 Memo. at 25. Thorne contends that during the July 15,
2014 hearing at which he sought new counsel he identified four such witnesses. Id.[4] To the
contrary, the record shows that he only referenced one prospective witness during that hearing,
an expert on heroin addiction. [Dkt. No. 98] at 3. Beyond that witness and discussing a potential
suppression motion, Thorne did not indicate that he had any other objections to counsel's
representation. Id. at 10 (The Court: "Mr. Thorne, is there anything else that Mr. Stambaugh has
discussed that has made you dissatisfied with his performance?" The Defendant: "No, Your
Honor." The Court: "It's just those two issues?" The Defendant: "Yes, Your Honor. Me and my
lawyer, we're getting along."). Further, even if there were other prospective witnesses that
counsel ought to have interviewed, Thorne has failed to establish a reasonable probability that
the outcome of his trial would have been different if counsel had interviewed these witnesses
before trial. Accord United States v. Coles, No. 1:13cv159, 2013 WL 1947259, at *4 (E.D .Va.
May 9, 2013) ("[Movant] fails to specify what information would have been obtained from

---

[4] Thorne's affidavit identifies three prospective witnesses: Deputy Sheriff Noloff, and inmates
Keith Kerns and Larenzo Alfonzo. § 2255 Memo. at 76. According to Thorne, Noloff and
Deputy Choy of the Adult Detention Center heard Alifom tell a different story than what the
deputies read in the newspaper, id. at 37, 66; however, Stambaugh explained that he decided not
to pursue these witnesses because Alifom offered approximately 11 different stories of what
happened on the night of Lonczak's death. Stambaugh Decl. ¶ 18. Further, Thorne was not
prejudiced by Stambaugh's decision given that, during cross-examination by Stambaugh, Alifom
admitted that he had lied on multiple occasions regarding the events during the night in question.
Trial Trans. at 156-158.

interviews of government witnesses, and therefore does not establish how those interviews would have produced a different result at trial."). After hearing the evidence at trial, the Court concluded that all of the testifying witnesses, despite their history of drug abuse, corroborated each other as to the important facts, particularly that they purchased drugs from Thorne when he was driving a green van that Thorne admitted owning. Trial Trans. at 224. In sum, Thorne cannot satisfy his burden of showing that counsel rendered ineffective assistance based on his failure to interview additional witnesses.

## 2. Claim 2 (Transcript of Phone Call)

Thorne argues that his counsel failed to request that the court reporter include in his trial transcript the contents of a phone call that was played for the jury and entered into the record as Government Exhibit 7. § 2255 Memo. at 22-23. In support of this claim, he cites the Court Reporter Act, which requires that a reporter shall record verbatim all proceedings in criminal cases had in open court. 28 U.S.C. § 753(b). Thorne cites no authority requiring recorded telephone calls to be included in the transcript when a copy of that call is entered into evidence. To the contrary, numerous circuits have denied such challenges. See United States v. Craig, 573 F.2d 455, 480 (7th Cir. 1977) ("Because the tape recordings played to the jury are part of the record on appeal, we find substantial compliance with 28 U.S.C. § 753(b)."); United States v. Payne, 148 F. App'x 804, 808 (11th Cir. 2005) ("Here, we were able to examine the evidence that was not transcribed at trial because the audio recordings and their written translated transcriptions were made a part of the record. Thus, we find no reversible error in the court reporter's failure to fully transcribe the recorded evidence presented at trial."). Although the Fourth Circuit has not "addressed the issue [of] whether a district court's failure to ensure the transcription of audio recordings played during a trial constitutes a violation of the CRA," it has

held that, "although a defendant has a right to a meaningful appeal, with the assistance of a complete transcript, omissions from a trial transcript only warrant a new trial if the missing portion of the transcript specifically prejudices a defendant's appeal." United States v. Graham, 711 F.3d 445, 451–52 (4th Cir. 2013) (internal quotations omitted).

The Court agrees with the Eleventh Circuit's conclusion that the Court Reporter Act is not violated when a recorded telephone call, included in the record, is not transcribed by the court reporter. Moreover, his argument that the transcript was necessary on appeal to assess the prejudice he faced at trial, id., is baseless because none of his arguments before the Fourth Circuit alleged prejudice[5] and the veracity and accuracy of the recorded call was not challenged on appeal, nor was it referenced in the Fourth Circuit's opinion or implicated in its analysis. As such, Thorne has not established that he was prejudiced by his counsel's alleged error, and this claim fails.

### 3. Claim 3 (Failing to Call Case Agent as Witness)

Thorne faults his counsel for not calling the case agent as a defense witness after "promis[ing]" to do so at the outset of the trial. § 2255 Memo. at 23. According to the transcript, at the outset of the trial Stambaugh told the Court that the defense "reserved the right to call a government witness or—case agent." Trial Trans. at 7. As an initial matter, reserving the right to call a witness is not a promise to do so. Moreover, Thorne provides no support for the proposition that counsel's decision not to call the case agent led the Court to infer that the case

---

[5] Of the four issues raised on appeal, three related to the computation of Thorne's sentencing guidelines, which were unaffected by the phone call. The fourth issue, a challenge to the sufficiency of the Government's evidence, was found to be without merit. The Fourth Circuit concluded that "the Government's evidence was more than sufficient to support Thorne's conviction." [Dkt. No. 102] at 3. In reaching this conclusion, the Fourth Circuit relied on the cooperating witness's testimony that during the time period alleged in the indictment the witness and Thorne worked together to sell heroin, and that the cooperator's testimony was corroborated by at least two other witnesses. Id. at 3-5.

agent's testimony would have been adverse to Thorne. To the contrary, such an inference would have been contrary to law. See United States v. Fisher, 484 F.2d 868, 870 (4th Cir. 1973) ("Where a witness is readily available to both sides, no inference is to be drawn against either party from the fact that he has not been called."); cf. Boeckenhaupt v. United States, 537 F.2d 1182, 1184 (4th Cir. 1976) (declining defendant's invitation to conclude that witnesses subpoenaed by the government and not called would have presented testimony that contradicted the government's case).

Setting aside the issue of improper inferences, counsel had no obligation to call the case agent as a witness. "'[T]he decision whether to call a defense witness is a strategic decision' demanding the assessment and balancing of perceived benefits against perceived risks, and one to which '[w]e must afford . . . enormous deference.'" United States v. Terry, 366 F.3d 312, 317 (4th Cir. 2004) (citing United States v. Kozinski, 16 F.3d 795, 813 (7th Cir. 1994)) (second alteration in original). One reason for this deference is that "[o]ften, a weak witness or argument is not merely useless but, worse than that, may detract from the strength of the case by distracting from stronger arguments and focusing attention on weaknesses." Id. at 318 (citing Epsom v. Hall, 330 F.3d 49, 53 (1st Cir. 2003)). To overcome this deference, a movant is required to provide facts establishing the particulars of what the uncalled witness would have said. Hayes v. Ponton, No. 1:12CV1126, 2013 WL 3730679, at *5 (E.D. Va. July 11, 2013) ("[F]ederal courts hold that a claim of ineffective assistance predicated on a failure to call witnesses fails where affidavits verifying the witnesses' testimony are not provided." (citing Bassette v. Thompson, 915 F.2d 932, 941 (4th Cir. 1991)). Thorne has provided no such evidence, only speculating as to what Detective Needles might have said on the stand. § 2255 Memo. at 24-25. These speculations are insufficient to establish ineffective assistance of counsel.

### 4. Claim 4 (Subject Matter Jurisdiction)

Thorne alleges that counsel failed to challenge the Court's subject matter jurisdiction. This argument is barely comprehensible and, as the government correctly explains, such an objection would have been baseless. Gov. Opp'n at 12. Federal district courts have subject matter jurisdiction over conduct violating the laws of the United States. See 18 U.S.C. § 3231 ("The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States."). Thorne was indicted for conspiracy to distribute 100 grams or more of heroin resulting in death, in violation of 21 U.S.C. § 846, and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). Both these statutes are federal criminal laws. Thorne's proposed jurisdictional challenge is that the August 21, 2013 distribution occurred after any conspiracy was complete and the Court's dismissal of the death-resulting allegation precluded consideration of lesser included offenses, including conspiracy to distribute drugs, because the death precipitated the investigation. Neither argument has a basis in law. The conspiracy alleged by the government and proved at trial occurred "from in and around 2012, and continu[ed] through in and around 2013." [Dkt. No. 15] at 1. The August 2013 distribution was within this period and jurisdiction was proper. Moreover, Thorne provides no authority for the proposition that the act that leads to the initiation of a government investigation is the sole basis on which a court has subject matter jurisdiction to try someone,[6] and, indeed, no such law exists. In sum, counsel was not ineffective for failing to raise these frivolous arguments.

### 5. Claim 5 (Presence of Case Agent)

---

[6] The one federal case cited by Thorne, Travelers Indem. Co. v. Bailey, 557 U.S. 137, 152 (2009), held that bankruptcy courts have continuing jurisdiction to enforce their orders more than ten years after they are entered and appears wholly inapposite to Thorne's claim.

Thorne criticizes his trial counsel for failing to insist that the Court exclude Detective

Needles from the courtroom as a prospective witness. § 2255 Memo. at 30 ("There is no

justification why counsel would permit the offer [sic] witness, the case agent Needles to sit at the

prosecutor table at Thorne's trial."). Federal Rule of Evidence 615 provides that, "[a]t a party's

request, the court must order witnesses excluded so that they cannot hear other witness's

testimony;" however, it is well-established that the case-agent is excluded from that rule as the

Fourth Circuit has held that "a government investigative agent involved in a criminal prosecution

. . . is within [the Rule 615(b) exception]." United States v. Parodi, 703 F.2d 768, 773 (4th Cir.

1983). Further, Detective Needles did not testify at trial and therefore Thorne cannot establish

any prejudice from Needles remaining in the courtroom. As such, counsel was not ineffective for

failing to object to the case agent's remaining in the courtroom during the trial.[7]

6. **Claims 6 and 7 (Government Exhibit 7 and Testimony of Special Agent Wisenhunt)**

In Claim 6, Thorne alleges that counsel erred by failing to object to the introduction of

Government Exhibit 7, a disc containing a recording of a December 4, 2013 phone call between

Power, who was then cooperating with the government, and Thorne. Trial Trans. at 97-98.

Thorne argues that admission of the exhibit was improper because there was a five-month gap

---

[7] In this claim, Thorne also makes a vague reference to the Confrontation Clause being violated by the fact that Detective Needles, who submitted multiple affidavits during the investigation, did not testify at trial, § 2255 Memo. at 30; however, he fails to provide any support for that claim. Nothing prevented defense counsel from calling Detective Needles to testify; however, from the record, there is no basis upon which to conclude that Detective Needles would have provided any evidence to help Thorne's case. Again, the tactical decisions of defense counsel are entitled to deference absent a specific factual showing by the movant. The cases cited by Thorne, § 2255 Memo. at 30, are not to the contrary. Bullcoming v. New Mexico, 564 U.S. 657, 660 (2011), held that defendants have a right to confront analysts who certify lab reports introduced at trial and Melendez-Diaz v. Massachusetts, 557 U.S. 305, 311 (2009), stands for the proposition that affidavits introduced at trial are testimonial. The affidavits signed by Detective Needles were submitted for purposes of the search and arrest warrants and neither was introduced at trial.

between the date of the call and his arrest and because the recipient of the call was "unidentified." Neither of these arguments provides a legitimate basis for an objection. The time lapse between the phone call and Thorne's arrest does not, as he alleges, constitute a "break in the chain of custody" and had no bearing on its admissibility. Id. at 31. Moreover, the recipient of the call was not "unidentified" at the time of the exhibit was introduced. To the contrary, Power testified that Thorne was the recipient of the call and that he had contacted Thorne on the same cell phone number used to arrange the drug deal on August 21, 2013. Trial Trans. at 97. Given that the call was relevant and properly authenticated, counsel had no meritorious basis to object to its admission.

Thorne also complains that Special Agent Whisenhunt improperly provided expert testimony despite being offered as a lay witness. § 2255 Memo. at 31. Fed. R. Evid. 701 provides, "[i]f a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Special Agent Whisenhunt's brief trial testimony simply authenticated Government Exhibit 7 as an accurate recording of a consensually monitored phone call from Power to phone number 202-765-4628, a call that Special Agent Whisenhunt stated she watched Power make. Trial Trans. at 161-62. During her testimony, Special Agent Whisenhunt made no representations about the identity of the person who received the call. Id. Thorne claims that "because the agent's opinions regarding his [sic] interpretation of the recorded phone call of an unidentified person were not based on his [sic] own perception, but rather, on his [sic] experience and training, his [sic] testimony could not be considered as lay opinion for the purpose of Fed. R. Evid. 701." § 2255

15

Memo. at 34. Thorne's description of Special Agent Whisenhunt's testimony is inaccurate; she did not offer any opinions or invoke her experience and training. Instead, her testimony was clearly permissible lay testimony. As such, defense counsel had no basis for objecting to her testimony.

Thorne argues that the testimony of Special Agent Whisenhunt and other witnesses who testified that he sold and manufactured cocaine and carried guns was evidence of prior bad acts and should have been objected to under Fed. R. Evid. 404(b)(1). § 2255 Memo. at 33. Rule 404(b)(1) provides that "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Rule 404(b) is "an inclusive rule, admitting all evidence of other crimes or acts except that which tends to prove only criminal disposition." United States v. Young, 248 F.3d 260, 271–72 (4th Cir. 2001) (internal quotation marks omitted). Importantly, the Rule 404(b) inquiry "applies only to evidence of other acts that are extrinsic to the one charged. Acts intrinsic to the alleged crime do not fall under Rule 404(b)'s limitations on admissible evidence. . . . Evidence is intrinsic if it is necessary to provide context relevant to the criminal charges." United States v. Basham, 561 F.3d 302, 326 (4th Cir. 2009) (internal quotation marks omitted). Here, evidence of Thorne's drug activity and gun possession was relevant to the crimes charged, thus it was intrinsic evidence and was not barred by Rule 404(b).

## 7. **Claims 8 and 9 (Search Warrant Issues)**

Thorne raises two claims related to the April 2014 search of his residence, arguing that counsel provided ineffective assistance by failing to file a motion for a Franks hearing challenging the evidence on which the warrant was based (Claim 8), and failing to file a motion to suppress the fruits of the search (Claim 9). § 2255 Memo. at 35-44. Both of these arguments

fail because, Thorne is unable to demonstrate that he was prejudiced by counsel's actions. As previously discussed, the Court suppressed the items seized from Thorne's residence after concluding that the warrant was stale. Trans., June 24, 2014, [Dkt. No. 96] at 4-6. As a result, Thorne was not actually prejudiced by counsel's failure to object.[8]

### 8. Claim 10 (Speedy Trial Issues)

Thorne complains that counsel was ineffective because he failed to ensure that a trial occurred within seventy days of the filing of indictment or initial appearance, as required by the Speedy Trial Act, see 18 U.S.C. § 3161(c)(1). § 2255 Memo. at 44. Although Thorne acknowledges that his trial was continued "due to counsel's family medical emergency" he claims that "counsel purposely set off his speedy trial due to a conflict of interest between" counsel and Thorne, id.; however, Thorne fails to identify any such conflict and the record establishes that the basis for the continuance was Stambaugh's wife's hospitalization with meningitis. Order, July 17, 2014, [Dkt. No. 48]; see also Stambaugh Decl. ¶ 20. It is well-established that certain delays may be excluded from the Speedy Trial Act's seventy-day count, including those where the court has found "that the ends of justice served by granting [a] continuance outweigh the public's and defendant's interests in a speedy trial." Zedner v. United States, 547 U.S. 489, 498-99 (2006). Because defense counsel requested a continuance with good cause and accommodating medical emergencies serves the ends of justice, cf. United States v. Crawford, 626 F. App'x 405, 407 (4th Cir. 2015), and the delay was relatively short, counsel's request for a continuance was objectively reasonable. In addition, Thorne has not shown that he was prejudiced by the delay. Although he points to co-conspirator Berthay accepting a plea

---

[8] In addition, the government represented that it had no intention of using the fruits of the search, except for perhaps the vehicle title for Thorne's green van, which was obtainable through independent means. Id. at 4-6.

17

agreement on July 18, 2014, one day after the trial was originally scheduled to be held, § 2255

Memo. at 44, the Speedy Trial Act only protects defendants against the loss of evidence and does

not protect them against newly acquired evidence. In sum, the circumstances of the continuance

do not support an ineffective assistance of counsel claim. See United States v. Crawford, 626 F.

App'x 405, 407 (4th Cir. 2015) ("Given the reason for the delay, the relatively short length of the

delay, and the lack of any apparent prejudice to the defense caused by the delay, we hold that

there was no violation of either the Speedy Trial Act or [movant's] constitutional right to a

speedy trial.")

9. **Claims 11 and 12 (Witness Vouching)**

Thorne Claims that counsel failed to object when the government vouched for particular

witnesses. "Vouching occurs when the prosecutor indicates a personal belief in the credibility or

honesty of a witness." United States v. Sanchez, 118 F.3d 192, 198 (4th Cir. 1997).

In Claim 11, Thorne contends that the government vouched for Power during his direct

testimony "[b]y eliciting testimony from Power that he had previously received a proffer letter

agreement that required him to tell the truth or otherwise, evidence would be used against him,

led the bench trial judge to clearly belive [sic] that the prosecutor had verified Power [sic]

information and had compensated Power because he told the truth." § 2255 Memo. at 50. This

argument fundamentally misapprehends the law. In the Fourth Circuit, "[P]resenting evidence on

a witness' obligation to testify truthfully pursuant to an agreement with the government and

arguing that this gives the witness a strong motivation to tell the truth is not, by itself, improper

vouching." United States v. Collins, 415 F.3d 304, 308 (4th Cir. 2005). Reference to a plea

agreement "becomes impermissible vouching only when the prosecutors explicitly or implicitly

indicate that they can monitor and accurately verify the truthfulness of the witness' testimony."

18

Id. (quoting Bowie, 892 F.2d at 1498). Here, the government simply asked Power whether he understood that pursuant to the proffer agreement he had a responsibility to tell the truth, Trial Trans. at 75, which does not constitute vouching.

Thorne's other vouching claim focuses on the prosecutor's closing arguments which discussed the credibility of testimony offered by government witnesses as compared to statements by Thorne. Contrary to Thorne's argument, the prohibition on vouching does not prohibit the government from commenting on the credibility of witnesses or even accusing them of lying. Moore v. United States, 934 F. Supp. 724, 730 (E.D. Va. 1996). Rather, because "most criminal trials and many civil trials involve contests between differing testimonial versions of past events where many of the versions reasonably appear to be deliberately false," prosecutors are not precluded from commenting on witness credibility, "provided, of course, that the prosecutor does not suggest that this is a personal opinion or that it is based on extra-record government information." Id. Here, "the prosecutor neither gave explicit personal assurances that his witnesses were trustworthy, nor indicated that information not presented to the jury supported his witnesses' testimony." United States v. Lewis, 10 F.3d 1086, 1089 (4th Cir. 1993). Instead, the prosecutor made arguments about the credibility of individual witnesses based on the evidence that had been presented and the incentives of those witnesses. This is well within the government's rights and defense counsel had no basis to object.

In addition, it bears emphasizing that, while vouching doctrine focuses on representations made by attorneys to juries. see United States v. Sullivan, 455 F.3d 248, 259 (4th Cir. 2006) ("A prosecutor may neither vouch for nor bolster the testimony of a government witness in arguments to the jury."), Thorne requested a bench trial. The policy rationale underlying the vouching prohibition is that "jurors will be unduly influenced by the prestige and prominence of

the prosecutor's office and will base their credibility determinations on improper factors." United States v. Edwards, 154 F.3d 915, 921 (9th Cir. 1998). In a bench trial, this same policy concern does not apply, as judges are less likely to be swayed by the government's representations. Therefore, even if prosecutor had vouched for the witnesses, counsel's failure to object would not have been prejudicial. See United States v. Chaggar, 197 F. App'x 704, 706 (9th Cir. 2006) (holding that although counsel vouched for a witness "we are satisfied that any error was harmless at a bench trial conducted by an experienced district judge"); Abney v. Vaughn, No. CIV. A. 03-66, 2003 WL 22436282, at *13 (E.D. Pa. Oct. 24, 2003).

**10. Claim 13 (Chain of Custody)**

Thorne faults his attorney for failing to challenge the introduction of evidence he claims was tainted by a break in the chain of custody. Thorne supports this position with cases that deal with chain of custody for illegal substances taken into evidence. § 2255 Memo. at 56-57. These cases do not apply to the evidence at issue in his case. Thorne's argument is that the government investigation was put on hold for eight months after the initial case went cold and that this delay somehow broke the chain of custody. Id. at 57. There is no prohibition on the government temporarily suspending an investigation and therefore defense counsel would have had no basis to complain about the suspension. Moreover, in Thorne's case, there were no drugs seized. The evidence of drugs involved in the case was the testimony of witnesses and the chemical analysis of Lonczak's bodily fluids, which confirmed the presence of heroin in her body. Following the initial crime scene examination, her body was placed in a locked body bag and transported to the Office of the Chief Medical Examiner, where the Department of Forensic Science obtained the fluids. The Department of Forensic Science held and tested these fluids in a secured area and the

government established the chain of custody in accordance with Fed. R. Evid. 901. Trial Trans. at 190-197. Therefore it was not ineffective assistance of counsel not to object to this evidence.

### 11. Claim 14 (Drug Quantity)

Thorne claims that "counsel provided ineffective assistance by failing to challenge the Drug Quanitity [sic] and guidelines used [at sentencing]." § 2255 Memo. at 64 (Claim 14). This position is directly contradicted by the record, which demonstrates that before the sentencing hearing, counsel filed objections to the Pre-Sentence Report in which he objected to the drug quantity. Thorne Sent. Memo., [Dkt. No. 65] at 1 ("Defendant objects to the recommendation that he be held accountable for 720 grams of heroin and 44 grams of cocaine . . . ."); [Dkt. No. 62] at 25 (stating that "Defense Counsel objects to the finding that the distribution of 720 grams of heroin and 44 grams of cocaine base were involved in this offense"). Although the Court described counsel's objections as "very thorough," they were overruled. Tran., Nov. 14, 2014, [Dkt. No. 100] at 4-5. Because Thorne had no factual basis to allege that his counsel failed to object to the guidelines, this claim necessarily fails.

### 12. Claim 15 (Brady violations)[9]

Thorne raises two claims faulting his attorney for failing to raise Brady violations. First, he argues that counsel failed to raise a Brady violation for the government's withholding the PERK results from Lonczak's autopsy. § 2255 Memo. at 65 (Claim 15); however, as Stambaugh's affidavit confirms, Thorne again misstates the record as these results were

---

[9] Thorne adds a reference to Amendment 782 to the United States Sentencing Guidelines and argues that he may be entitled to a lower sentence in light of that Amendment, which established a two-level reduction for offense levels found in § 2D1.1 and § 2D1.11 of the Guidelines. The amendment went into effect on November 1, 2014. Thorne was sentenced on November 14, 2014 and the Pre-Sentence Report reflects that Thorne's guidelines were based on the amended offense levels. [Dkt. No. 62] at 6.

produced to counsel during discovery. Stambaugh Decl. ¶ 25.[10] Second, Thorne claims that his

counsel should have claimed a <u>Brady</u> violation because the government failed to disclose a

proffer letter with Power before trial. § 2255 Memo. at 67 (Claim 16). The government

represents that the letter was disclosed to counsel on July 14, 2014, over a month before the

ultimate trial date, Gov. Exhibit List, [Dkt. No. 41], and therefore was neither "unknown" nor

unavailable for "impeachment," § 2255 Memo. at 68. Further, according to the trial transcript,

the proffer letter merely indicated that Power agreed to tell the truth and that the government

agreed not to use his testimony against him and, as such, it is not <u>Brady</u> material. Trial Trans. at

75-76; <u>see also</u> Gov. Ex. 6. In light of the fact that the letter was available to defense counsel

prior to trial and did not qualify as <u>Brady</u>, counsel was not ineffective for failing to raise a <u>Brady</u>

objection.

  In sum, each of Thorne's sixteen ineffective assistance of counsel claims fails to satisfy

the two-prong test set forth in <u>Strickland</u> and none entitle him to an evidentiary hearing on the

contentions raised in his motion. As the Fourth Circuit has explained, "[T]o obtain an evidentiary

hearing on an ineffective assistance claim-or, for that matter, on any claim-a habeas petitioner

must come forward with some evidence that the claim might have merit. Unsupported,

conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing." <u>Nickerson</u>,

---

[10] Thorne further argues that his counsel was ineffective for failing to raise the PERK results at trial. § 2255 Motion at 65. Thorne claims that the PERK results indicate that Ms. Lonczak had sexual intercourse shortly before her death, a fact that could have been used to impeach the government's witnesses who claimed that they were with Ms. Lonczak throughout the evening, <u>id.</u>; however, he cites no factual support for this claim. Instead, it is contradicted by the results themselves, which indicate that "No spermatozoa were identified and no seminal fluid was indicated on the oral, vaginal/cervical or anorectal samples. No seminal fluid was indicated on the underpants." Gov. Opp'n at 23 n.13. Upon reviewing the report, counsel concluded that "[b]ecause the report found that no material foreign to the victim was found in or on her body, I did not see why the report was relevant to the allegations against [Thorne]." Stambaugh Decl. ¶ 25. Accordingly, Thorne fails to raise a factual dispute that merits an evidentiary hearing.

971 F.2d at 1136. Because Thorne has failed to submit any evidence to support the merit of any of his claims, his "unsupported, conclusory allegations" do not warrant an evidentiary hearing.

### C. Johnson Claims

Thorne's motion brings a challenge under Johnson v. United States, 135 S. Ct. 2251 (2015), which struck down the residual clause of the Armed Career Criminal Act, arguing that the analysis in Johnson invalidates the residual clause of the career-offender guidelines. See § 2255 Motion at 10-11. Although this argument is not developed, presumably the movant intends to challenge the residual clause of the career-offender guidelines. U.S.S.G. § 4B1.2(a), as unconstitutionally vague under Johnson. At the request of the government, and with the consent of movant, this § 2255 Motion was held in abeyance pending the Supreme Court's resolution of Beckles v. United States, a case addressing whether Johnson invalidates the residual clause of the career-offender guidelines and whether it is retroactive in guidelines cases on collateral review. [Dkt. No. 114] at 26 n.15; Def. Reply. at 8. Beckles has now been decided and the Supreme Court has rejected petitioner's claim, holding that "the advisory Sentencing Guidelines are not subject to a due process vagueness challenge" and therefore "§ 4B1.2(a)'s residual clause is not void for vagueness." 580 U.S. ___, slip op. at 13 (2017). Therefore this claim is without merit.

### D. Additional Claims

Thorne raises three additional claims unrelated to ineffective assistance of counsel or Johnson, arguing that the Court erred by 1) placing the burden of proving the warrantless search on him, 2) declining to appoint new counsel following his motions on May 16, 2014 and July 15, 2014, and 3) denying his post-trial motion. § 2255 Memo. at 68-71. It is well-established that a motion pursuant to § 2255 "may not do service for an appeal," and consequently claims that have been waived by a failure to appeal are procedurally defaulted unless the movant can show "cause

excusing his double procedural default" as well as "actual prejudice resulting from the errors of which he complains." United States v. Frady, 456 U.S. 152, 165-68 (1982) (internal quotation marks omitted). Thorne's brief demonstrates neither cause nor prejudice, therefore these claims are waived.[11]

### III.    CONCLUSION

For the reasons stated above, Thorne's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255 [Dkt. No. 108] will be DISMISSED by an appropriate Order to be issued with this Memorandum Opinion.

Entered this _12_ day of April, 2017.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge

---

[11] Thorne briefly argues that his ineffective assistance of counsel claims provide cause for his failure to bring claims on direct appeal because "the failure of appellate counsel to preserve on direct appeal matters that will be deemed meritorious on collateral review constitutes cause" (citing Wainwright v. Sykes, 433 U.S. 72 (1997)). § 2255 Memo. at 17. This argument is unavailing because Thorne's ineffective assistance of counsel arguments pertain to his trial counsel, not his appellate counsel, and the alleged errors pertain to decisions by the Court, not to actions by either of his counsel.